1

2                                                              O

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   EDUARDO FONSECA,                )        NO. EDCV 10-00470-MAN
                                     )
12              Plaintiff,           )
                                     )        MEMORANDUM OPINION
13        v.                         )
                                     )        AND ORDER
14   MICHAEL J. ASTRUE,              )
     Commissioner of Social Security,)
15                                   )
                Defendant.           )
16   _____)

17

18        Plaintiff filed a Complaint on April 8, 2010, seeking review of the

19   denial by the Social Security Commissioner (the "Commissioner") of

20   plaintiff's application for a period of disability, disability insurance

21   benefits ("DIB"), and social security income ("SSI").  On April 23,

22   2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed

23   before the undersigned United States Magistrate Judge.  The parties

24   filed a Joint Stipulation on December 8, 2010, in which: plaintiff

25   seeks an order reversing the Commissioner's decision and remanding this

26   case for the payment of benefits or, alternatively, for further

27   administrative proceedings; and defendant requests that the

28   Commissioner's decision be affirmed.  The Court has taken the parties'

Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability, DIB, and SSI. (Administrative Record ("A.R.") 8.) Plaintiff claims to have been disabled since September 1, 2007, due to heart surgery, Marfan's syndrome, headaches, depression, and persistent chest/upper abdominal pain. (A.R. 19, 89, 114.) Plaintiff has past relevant work experience as a hardware supervisor and security guard.[1] (A.R. 13.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 8, 42-46, 50-55), plaintiff requested a hearing (A.R. 56-59, 63-64). On October 14, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge F. Keith Varni (the "ALJ"). (A.R. 15-37.) Lay witness Maria Munoz also testified. (A.R. 32-36.) On December 7, 2009, the ALJ denied plaintiff's claim (A.R. 8-14), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since September 1, 2007, the alleged onset date of plaintiff's

---

[1]    Although not discussed in the ALJ's decision, it appears that plaintiff also has past relevant work experience as a driver and machine operator. (*See*, *e.g.*, A.R. 94.)

claimed disability. (A.R. 10.)  The ALJ further found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012.  (*Id.*)  The ALJ determined that plaintiff has the "severe impairments [sic]" of "Marfan's Syndrome which resulted in an aneurysm of the aortic root that was repaired surgically without complication." (*Id.*)  The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals  one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (A.R. 11.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that plaintiff "should avoid exposure to hazardous machinery and heights."  (A.R. 11.)

The ALJ concluded that plaintiff's past relevant work, as a hardware supervisor and security guard, does not require the performance of work-related activities precluded by plaintiff's RFC.  (A.R. 13.) Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act from September 1, 2007, the alleged onset date, through the date of his decision. (A.R. 13.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which

4

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ failed to consider the lay witness testimony of Maria Munoz; (2) the ALJ improperly rejected the opinions of plaintiff's treating physicians, who diagnosed plaintiff with neuropathic pain; (3) the ALJ failed to secure a consultative examination; (4) the ALJ failed to find plaintiff's neuropathic pain to be a "severe" impairment; and (5) the ALJ improperly evaluated plaintiff's credibility.[2] (Joint Stipulation ("Joint Stip.") at 2-3.)

**I. The ALJ Erred By Failing To Address The Testimony Of Lay Witness Maria Munoz.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. <u>Stout</u>, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§

---

[2] The Court addresses these issues below, although not in the order presented.

404.1513(d)(4), 416.913(d)(4) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted). Further, the reasons "germane to each witness" must be specific. Stout, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony"). Lastly, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

At the October 14, 2009 administrative hearing, plaintiff's friend, Maria Munoz, provided testimony regarding plaintiff's daily activities and symptoms. (A.R. 32.) Ms. Munoz testified that she: takes plaintiff to doctor's appointments and the grocery store; assists plaintiff with his grocery shopping; and helps "pick up heavy things for him." (*Id.*) She also testified that, when she has the opportunity, she cooks and performs household chores for plaintiff. (A.R. 33.) Ms. Munoz further testified that plaintiff has mood swings, and sometimes she must "remind him to take [his] medication or . . . go to the doctor." (A.R. 34.) She also testified that plaintiff "spends a lot of time laying in bed because of his pain." (A.R. 34.) According to Ms. Munoz: plaintiff can "sit for a little bit . . . for small periods[,]

and then, he has to go lay down" (*id.*); when she drives with plaintiff, he complains of pain, primarily in his chest, and must lie down because "he can't really sit straight up" (A.R. 35-36); and plaintiff has tried everything the doctors "told him to do . . . [but the] pain [in his chest] is still there" (A.R. 36). In his decision, the ALJ failed to address Ms. Munoz's lay witness testimony.

When an ALJ disregards a lay witness's testimony without comment, the Court applies a harmless error analysis. <u>Stout</u>, 454 F.3d at 1054-56. Applying the harmless error analysis and crediting the testimony of Ms. Munoz fully, the Court cannot confidently conclude, as required, that "no reasonable ALJ . . . could have reached a different disability determination." *Id.* at 1056. Ms. Munoz's testimony both corroborates and expands upon plaintiff's testimony,[3] and thus, contrary to defendant's contention, the ALJ's failure to address Ms. Munoz's testimony cannot be dismissed as harmless error.[4]

## II. __The ALJ Erred In Finding That Plaintiff's Neuropathic Pain Does Not Constitute A Severe Impairment__.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§

---

[3] The Court notes, for example, that Ms. Munoz testified that plaintiff cannot "sit straight up" -- a limitation that was not alleged by plaintiff. (A.R. 36.)

[4] Defendant further contends that ALJ's error is harmless, because plaintiff's past jobs do not require "much sitting." (Joint Stip. at 7.) However, as noted above, Ms. Munoz testified to limitations which far exceed an inability to do "much sitting." Accordingly, defendant's contention is unpersuasive.

404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), and 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[5] 20 C.F.R. §§ 404.1520(c), 416.920(c). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that the step two inquiry is "a de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005)(citation omitted); *see* Soc. Sec. Ruling 85-28, 1985 WL 56856, at *3, 1985 SSR LEXIS 19, at *9 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*")(emphasis added).

At step two of the sequential evaluation process, the ALJ determined that plaintiff has the following "severe impairments [sic]": "Marfan's Syndrome which resulted in an aneurysm of the aortic root that was repaired surgically without complication." (A.R. 10.) The ALJ made no determination, however, regarding whether plaintiff's neuropathic pain constitutes a severe impairment. Plaintiff contends that the ALJ's

---

[5]    Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), 416.921(b). Examples of such activities include: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) the "use of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.*

failure to find plaintiff's neuropathic pain to be a severe impairment constitutes error. (Joint. Stip. at 3, 23-26.)

After undergoing aortic valve root reconstruction and replacement surgery on January 1, 2008, plaintiff reported experiencing pain in the lower area of his sternotomy incision site. (A.R. 455.) Specifically, plaintiff testified that he has difficulties lifting heavy items[6] (A.R. 27) and sitting for more than 20 minutes at a time without experiencing pain in his "abdominal [sic], right below [his] chest" (A.R. 19-20). Plaintiff testified that his pain is decreased by either lying down or standing up. (A.R. 19-20.)

As discussed in detail below, plaintiff's treating physicians have attributed plaintiff's symptoms to, and diagnosed plaintiff with, neuropathic pain. In diagnosing plaintiff with neuropathic pain, plaintiff's treating physicians specifically found that plaintiff's neurological system is "[p]ositive for sensory change" (A.R. 457) and that his "nerves are sending abnormal signals" (A.R. 418). In addition, plaintiff's treating physicians have prescribed powerful drugs to treat plaintiff's neuropathic pain, including, *inter alia*: hydrocodone with acetaminophen -- a narcotic pain reliever (*see, e.g.,* A.R. 458, 467); lidoderm -- a topical anesthetic (*see, e.g.,* A.R. 418, 438, 467, 512, 519*)*; nortriptyline -- an antidepressant that is used to treat, among other things, nerve pain (*see, e.g.,* A.R. 512); neurontin/gabapentin -- an anticonvulsant used to treat nerve pain (*see, e.g.,* A.R. 418, 438, 456, 467); and, most recently, morphine/morphine sulfate -- a pain

---

[6]     Plaintiff testified that he can lift, at most, a gallon of milk without experiencing pain. (A.R. 27.)

reliever used to treat moderate to severe pain (*see, e.g.,* A.R. 415, 445-46, 519).

Based on plaintiff's testimony, the opinions of plaintiff's treating physicians, and the powerful medications that have been prescribed for plaintiff, substantial evidence of plaintiff's neuropathic pain was presented to the ALJ. The Court finds that plaintiff's neuropathic pain would have more than a de minimus impact on plaintiff's ability to perform basic work activities. Accordingly, the ALJ's failure to find plaintiff's neuropathic pain to be severe at step two of the sequential evaluation process constitutes error.[7]

Moreover, the ALJ's error cannot be deemed harmless. In general, an ALJ's failure to discuss a claimant's impairment at step two may be deemed harmless only when the ALJ's error did not prejudice a claimant at later steps in the sequential evaluation process. In <u>Burch</u>, for example, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to discuss plaintiff's obesity in his step two analysis. 400 F.3d at 682. The Ninth Circuit concluded, however, that the assumed error was harmless, because it would not have impacted the ALJ's analysis at either step four or five of the evaluation process.

---

[7]     There is no indication that the side effects of plaintiff's medications were considered in the disability evaluation. *See* <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "'significant impact on an individual's ability to work'")(citation omitted); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms should be considered in the disability evaluation); 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Specifically, the Ninth Circuit found that, for purposes of step four, plaintiff failed to point to any evidence of functional limitations due to her obesity that would have impacted the ALJ's analysis. *Id.* at 683. Further, at step five, the Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered [plaintiff's] obesity in his RFC determination" -- *i.e.*, there were no "functional limitations as a result of [plaintiff's] obesity that the ALJ failed to consider." *Id.* at 684; *see also* Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(finding that any error the ALJ committed in failing to list plaintiff's bursitis at step 2 was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the bursitis at [s]tep 4").

In this case, unlike in Burch and Lewis, the Court cannot conclude that the ALJ's failure to consider plaintiff's neuropathic pain is harmless error. As discussed in detail below, the ALJ improperly rejected the opinions of plaintiff's treating physicians regarding plaintiff's neuropathic pain and failed to discuss all of plaintiff's alleged resulting functional limitations. Certainly the alleged limitations -- to which both plaintiff and Ms. Munoz testified -- could have impacted the ALJ's analysis at either step four or five of the sequential evaluation process. Accordingly, because the Court cannot conclude that plaintiff was not prejudiced at a later step, the Court cannot find the ALJ's error to be harmless.[8] *See* Stout, 454 F.3d at 1055

---

[8]     Defendant contends that the ALJ did not commit error at step two, because he "properly relied upon the opinion of the State Agency reviewing physician and medical analysts" who considered plaintiff's pain in his lower sternum area. (Joint Stip. at 25.)  While these opinions reference an October 24, 2008 treatment note in which

(finding an error to be harmless when it "was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").

## III. The ALJ Improperly Rejected The Opinions Of Plaintiff's Treating Physicians.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927.

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. Id.

plaintiff's pain in his lower sternal area is reported (353, 351), the opinions pre-date the neuropathic pain diagnoses by plaintiff's treating physicians and, thus, appear to be based upon an incomplete medical record. Further, there is no indication that the physicians evaluated plaintiff's alleged functional limitations as set forth above. Accordingly, defendant's argument in unpersuasive.

An ALJ "has a special duty to fully and fairly develop the record and to assure that claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Pursuant to 20 C.F.R. § 404.1512(e) and 416.912(e), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ." See Smolen, 80 F.3d at 1288 (noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

On January 1, 2008, plaintiff, who has Marfan's syndrome (A.R. 208), underwent aortic valve root reconstruction and replacement surgery after doctors discovered that he had a dilated aortic root (A.R. 366). During plaintiff's open heart surgery, plaintiff's "sternum was reapproximated using interrupted stainless steel wires and [his] wound [was] closed in layers using absorbable sutures." (A.R. 399.)

Following surgery, plaintiff reported experiencing pain in the lower area of his sternotomy incision site. (A.R. 455.) Initially, doctors characterized plaintiff's complaints as post-operative pain. (See, e.g., A.R. 234 ("clinically stable with post op pain").) However, because plaintiff's pain persisted, doctors ordered a CT scan (A.R. 326) and additional x-rays (A.R. 242). Although the CT scan and x-ray results were fairly unremarkable, physical examinations of the area revealed keloid formation along the lower sternotomy incision site. (A.R. 141, 357.) To treat the keloid, plaintiff underwent a series of steroid injections which flattened the keloid, but failed to provide

13

plaintiff with any pain relief.[9]  (*See, e.g.,* A.R. 471-72.)

Plaintiff continued to experience pain, and it was believed that plaintiff might have an incisional hernia.  (A.R. 486.)  Although it was ultimately determined that plaintiff did not have an incisional hernia, general surgeon Lawrence Bryan Kong, M.D. suggested sternal wire removal as a possible option to help relieve plaintiff's pain.  (A.R. 488.)  On February 18, 2009, Dr. Kong removed one wire from plaintiff's lower sternum.  (A.R. 495, 508.)  However, the surgical procedure provided plaintiff with no long-term pain relief.  (A.R. 506.)

On March 10, 2009, plaintiff was seen by Dr. Dennis Michael Lindeborg, M.D.  (A.R. 508-10.)  Dr. Lindeborg noted that plaintiff's sternum scar was tender to palpation and that plaintiff had allodynia[10] of the skin around the lower portion of his scar.  (A.R. 509.)  Dr. Lindeborg diagnosed plaintiff with neuropathic pain and noted that plaintiff's complaints of "persistent pain around the lower sternotomy scar [are a result of] neuropathic pain."  (A.R. 508.)  On March 24 (A.R. 511-12), April 20 (A.R. 455-56), and May 14, 2009 (418, 470), plaintiff was again seen by Dr. Lindeborg, who continued to diagnose plaintiff with neuropathic pain.  In  documenting plaintiff's history, Dr. Lindeborg noted, *inter alia,* that plaintiff "is unable to do any physical labor because it exacerbates his pain."  (A.R. 455, 470.)  Dr.

---

[9]    In fact, treatment notes indicate that the steroid injections actually made plaintiff's pain worse.  (A.R. 437.)

[10]    Defined as a "pain resulting from a stimulus (as a light touch of the skin) which would not normally provoke pain."  Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/medical/allodynia.

Lindeborg also noted that, while plaintiff's "pain is not a sign of danger to his health," plaintiff's "nerves are sending abnormal signals." (A.R. 418.)

On April 8, 2009, plaintiff was seen by Renu Mittal, M.D., who also diagnosed plaintiff with neuropathic pain. (A.R. 457-58.) In the history section of her treatment note, Dr. Mittal noted that plaintiff "has difficulty turning, sitting and lifting anything." (A.R. 457.) Dr. Mittal further noted, in the "Review of Systems" section of her treatment note, that plaintiff's cardiovascular system was "[p]ositive for chest pain," and his neurological system was "[p]ositive for sensory change." (*Id.*) After physically examining plaintiff, Dr. Mittal also noted that plaintiff exhibited tenderness in the lower sternum area. (A.R. 458.)

On July 31, 2009, plaintiff was seen by Andrea Celeste Sircable, D.O. (A.R. 437, 446), who also diagnosed plaintiff with neuropathic pain in the "lower chest wall/upper abdominal over scar" (A.R. 446). In the history section of her treatment note, Dr. Sircable noted that plaintiff's pain is "increased by sitting on a chair, fatigue, lifting/carrying, household activities, sexual activity, emotion stress, tension, walking, standing, bending, kneeling, coughing/sneezing and bowel/bladder function, [and] anything touching the area." (A.R. 438.) She also noted that plaintiff's pain is decreased by "lying down, rest and lidoderm patches." (*Id.*)

In what appears to be an attempt by the ALJ to reject the opinions of the treating physicians who diagnosed plaintiff with neuropathic

pain, the ALJ states:

> [Plaintiff] has complained of pain at the distal end of the chest incision site which is obviously not cardiac in origin. No definitive cause of the asserted pain symptoms has been objectively substantiated. It has been speculated that the pain is "neuropathic" in nature (Exhibit 11F, Page 21) without any specification of what particular nerve or system of nerves might be involved.

(A.R. 11.) The ALJ further states that Dr. Lindeborg's opinion that plaintiff "'is unable to do any physical labor because it exacerbated his pain' is not supported by objective findings in [plaintiff's] longitudinal treatment record (Exhibit 9F, Page 7) discussed above." (A.R. 13.)

The ALJ's reasons for rejecting the opinions of plaintiff's treating physicians are unpersuasive and may suggest a need to develop the record further. Plaintiff's treating physicians have diagnosed plaintiff with neuropathic pain and prescribed powerful medications, including morphine, for him in an effort to treat and/or alleviate plaintiff's neuropathic pain. Significantly, Dr. Mittal found that plaintiff's neurological system was "[p]ositive for sensory change" (A.R. 457), and Dr. Lindeborg opined that plaintiff's "nerves are sending abnormal signals" (A.R. 418). The opinions of plaintiff's treating physicians are unequivocal and uncontradicted, and thus, the ALJ's wholesale dismissal of their opinions as "speculative" is improper.

The ALJ rejects Dr. Lindeborg's "opinion" regarding plaintiff's functional limitations, because it "is not supported by objective findings in [plaintiff's] longitudinal treatment record." (A.R. 13.) To the extent the ALJ had any questions regarding the cause of plaintiff's neuropathic pain, the particular nerve(s) or system(s) of nerves that might be involved, and/or what objective evidence supported the treating physicians' neuropathic pain diagnoses,[11] the ALJ should have recontacted plaintiff's treating physicians in accordance with his duty to conduct an appropriate inquiry.[12] *See* 20 C.F.R. §§ 404.1512(e), 416.912(e) (noting that the administration "will seek additional evidence or clarification from your medical source when the report . . . from your medical source contains a conflict or ambiguity that must be resolved, [or] *the report does not contain all the necessary information*")(emphasis added); *see also,* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988)("To say medical opinions are not supported by

---

[11]    It would appear that plaintiff's sternotomy scar, keloid revision, and documented tenderness along the scar area may be viewed as objective evidence supporting the treating physicians' neuropathic pain diagnoses. Moreover, the treating physicians' statements that plaintiff's neurological system is "[p]ositive for sensory change" (A.R. 457) and that his "nerves are sending abnormal signals" (A.R. 418) may be supported by objective evidence not specifically detailed in the treating physicians' treatment notes.

[12]    "Neuropathic pain often seems to have no obvious cause; but some common causes of neuropathic pain include:  Alcoholism[;] Amputations[;]  back, leg, and hip problems[;]  Chemotherapy[;] Diabetes[;] Facial nerve problems[;] HIV infection or AIDS[;] Multiple sclerosis[;]  Shingles;  [and]  Spine  surgery."  *Neuropathic Pain Management*, WEBMD, http://webmd.com/pain-management/guide/neuropathic-pain.  To diagnose neuropathic pain, "[a] doctor will conduct an interview and physical exam.  He or she may ask questions about how you would describe your pain, when the pain occurs, or whether anything specific triggers the pain." *Id.*  To treat neuropathic pain, physicians may prescribe non-steroidal anti-inflammatory drugs, anticonvulsants, antidepressants, and/or stronger medications, such as those containing morphine. *Id.*  "Unfortunately, neuropathic pain often responds poorly to standard pain treatments and occasionally may get worse instead of better over time." *Id.*

17

sufficient objective findings or are contrary to the preponderant conclusions mandated by the objecting findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")(footnote omitted).

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for rejecting the opinions of plaintiff's treating physicians.

## IV.   **The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991)(*en banc*); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her

18

conduct; (3) the claimant's daily activities; (4) the claimant's work
record; and (5) testimony from physicians and third parties concerning
the nature, severity, and effect of the symptoms of which the claimant
complains.  *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.
2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments
could reasonably be expected to cause the alleged symptoms." (A.R. 13.)
Further, the ALJ cited no evidence of malingering by plaintiff.
Accordingly, the ALJ's reason for rejecting plaintiff's credibility must
be "clear and convincing."

The ALJ stated that plaintiff's "statements concerning the
intensity, persistence and limiting effects of [his] symptoms are not
credible to the extent they are inconsistent with [the ALJ's RFC]
assessment." (A.R. 13.)  Specifically, the ALJ found plaintiff to be
not credible because: (1) "[t]here is no objective evidence to support
[plaintiff's] allegation of abdominal pain symptoms"; (2) plaintiff
denied any benefit from medication despite having "admitted [to
experiencing relief] to certain modalities in the treatment record"; and
(3) plaintiff "refused [medical] intervention." (A.R. 11-12.)

The ALJ's assertion that "[t]here is no objective evidence to
support [plaintiff's] allegations of abdominal pain symptoms" (A.R. 12),
is permeated by the same errors as described in Sections II and III
*supra*.  Thus, the Court cannot yet reach the merits of the ALJ's first
ground for discrediting plaintiff.
///

The ALJ's second ground for rejecting plaintiff's testimony is misguided. In finding plaintiff to be not credible, the ALJ stated that he found plaintiff's "denial of any benefit from medication highly unlikely and contrary to relief admitted to certain modalities in the treatment record." (A.R. 12.) Although it is true that plaintiff initially testified at the administrative hearing that his medication did not relieve his pain, plaintiff testified almost immediately thereafter that morphine provides him with some relief at night. (A.R. 28.) Thus, when plaintiff's statements are read together, it does not appear, as the ALJ contends, that plaintiff denies any relief from his medication. *See* Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion). Moreover, while the ALJ does not specifically identify the purported inconsistencies between plaintiff's testimony and the treatment notes, a review of the record reveals that plaintiff has not received any long-term relief from his medications, as evidenced by the fact that his physicians have continued to prescribe him increasingly stronger medications and/or dosages of medication.[13]

---

[13]    A.R. 471-72 (January 2, 2009 -- second steroid injection flattened keloid, but "pain in epigastric area . . . persists"); A.R. 457 (April 8, 2009 -- "treated for neuropathic pain and started on nortryptiline starter pack"; "[c]ontinues to have pain in that area, no help with the medication"); A.R. 418, 470 (May 15, 2009 -- "escalating dose of nortriptyline . . . did not help [plaintiff] . . . pain persists"; "[Plaintiff] still having persistant [sic] neuropathic pain. He is a little better with the neurontin. Discussed increasing the neurontin [dosage]."; plaintiff prescribed Gabapentin and Lidoderm patch); A.R. 419 (July 16, 2009 -- "complains of constant pressure, burning, ripping feeling; ran out of breath in upper abdominal/distal sternum area"; relieving factors: "meds [and] [s]leep on the side");

Accordingly, the ALJ's reason cannot constitute a clear and convincing reason for finding plaintiff to be not credible.

The ALJ's third reason for finding plaintiff to be not credible -- *to wit*, that plaintiff "refused intervention" despite reporting "multiple symptoms with no substrate of documented impairments" -- is also neither clear nor convincing. On August 5, 2009, plaintiff had his blood pressure checked and complained of abdominal pain and dizziness. (A.R. 414-17.) The nurse and physician assistant who treated plaintiff offered to make an appointment for him to be seen that day; however, plaintiff declined their offer, because he did not want to miss his pain management class scheduled for later that same day. (A.R. 414, 416.) While an ALJ may consider an unexplained or inadequately explained failure to seek treatment when evaluating credibility, in this case, plaintiff adequately explained he did not want to schedule an appointment that day, because he already had a pre-existing appointment at his pain management class. Accordingly, the ALJ's reason cannot constitute a clear and convincing reason for finding plaintiff to be not credible.

Moreover, while defendant offers several reasons to explain the ALJ's credibility determination -- including, *inter alia*, plaintiff's self-limited activities, lack of motivation, and failure to follow

---

A.R. 444-45 (July 29, 2009 -- chronic chest wall/neuropathic pain; "wean off the Gabapnetin [sic] at [plaintiff's] request -- doesn't think helping"; plaintiff prescribed morphine to treat pain at night); A.R. 437 (July 31, 2009 -- steroid injections made pain worse; opiates: "help[ed] pain so he could sleep"; Non-steroidal anti-inflammatory drugs (NSAIDs): "made headache worse and didn't help pain; anticonvulsants: "hasn't noticed any difference in pain"; antidepressants: "didn't help sleep or pain"; "lidoderm patches . . . do help").

treatment -- the Court cannot entertain these post hoc rationalizations. *See, e.g.*, <u>Connett</u>, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

# V. **Consultative Examination**

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ may determine that a consultative examination of plaintiff is appropriate under the circumstances. Accordingly, the Court does not reach plaintiff's third claim -- *to wit*, that the ALJ erred by failing to secure a consultative examination for plaintiff.

Although the Court does not reach plaintiff's third claim, the Court notes that the State Agency reviewing physician and medical analysts' opinions, upon which the ALJ relied in determining plaintiff's RFC, pre-date those of plaintiff's treating physicians, who diagnosed plaintiff with neuropathic pain. Therefore, should the ALJ reject the opinions of plaintiff's treating physicians, the ALJ's RFC assessment would be informed only by the opinions of the state agency reviewing physician and medical analysts -- opinions which are not based upon a complete review of the medical evidence. Accordingly, a consultative examination and/or further development of the record may be necessary.

///
///
///
///

**VI. <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179. ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

On remand, the ALJ must correct the above-mentioned deficiencies and errors. After so doing, the ALJ may need to secure a consultative examination for plaintiff and reassess plaintiff's RFC, in which case, testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

*///*

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 10, 2011

_____

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24